IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW ALLAN HALL,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SCOTTSBLUFF COUNTY DETENTION CENTER, SCDC SEARGENT JOHNSON, NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, NEBRASKA STATE PENITENTIARY, N.D.C.S SEARGENT HABTU, N.D.C.S. SEARGENT REISDORFF, N.D.C.S. CASE MANAGER HAUSER, N.D.C.S. CASE MANAGER ADAIR, NDCS CASE MAGANER HILL, NDCS CASE MANAGER SHERWOOD, NDCS CASE MANAGER DELGADO, NDCS LT. VAST, and NDCS SGT. FORD,<br><br>　　　　　Defendants. | **8:25CV478**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff Matthew Allan Hall's ("Plaintiff") Complaint, Filing No. 1, filed on July 29, 2025. Also before the Court are Plaintiff's two motions requesting appointment of counsel, Filing No. 4; Filing No. 8, and correspondence, which the Court construes as both a motion for clarification and a supplement to his Complaint, Filing No. 10. Plaintiff has been given leave to proceed in forma pauperis. Filing No. 7. The Court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A and will address Plaintiff's pending motions. In conducting its review, the Court will consider the supplemental portion of Plaintiff's correspondence at Filing No. 10 as part of the Complaint.

## I. SUMMARY OF COMPLAINT

Plaintiff is a prisoner currently confined in the Reception and Treatment Center ("RTC") within the custody of the Nebraska Department of Correctional Services ("NDCS"). Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against the Scotts Bluff[1] County Detention Center ("SBCDC"), SBCDC Sergeant Johnson, NDCS, the Nebraska State Penitentiary ("NSP"), and several NDCS employees—Sergeants Habtu, Reisdorff, and Ford; Case Managers Hauser, Adair, Hill, Sherwood, and Delgado, and Lieutenant Vast (collectively "NDCS Defendants")[2]—for alleged violations of his civil rights. As the Court understands it, Plaintiff alleges the following as his statement of claim.

On December 8, 2024, Plaintiff was transported from Colorado to the SBCDC. Upon arrival, Plaintiff spoke with "Medical Sgt. Johnson" and was given a urinalysis, which confirmed Plaintiff was on a high dosage of a daily medication for Opioid Use Disorder with "severe withdrawal effects" and Plaintiff "would be in need of that medication." Filing No. 1 at 17–18; Filing No. 10 at 1. Plaintiff went without this medication for 17 days "and no withdrawal protocol was given." Filing No. 1 at 18. "Grievance processes were also delayed and forestalled. Medical attention was denied" and Plaintiff's "repeated attempts to speak to . . . Johnson were dismissed." *Id*. at 19.[3] "After numerous inmate requests, Sgt. Johnson produced an emergency prescription." *Id*. at 18. However, from December 2024 to March 2025, Plaintiff "was forced to swallow the crushed medication" contrary to

---

[1] The Court will use the correct spelling of "Scotts Bluff" throughout this Memorandum and Order.

[2] The Court will refer to the individual NDCS Defendants, as well as SBCDC Sergeant Johnson, by their last names.

[3] All citations to Plaintiff's pleadings are corrected for spelling, capitalization, and punctuation throughout this Memorandum and Order.

the medication administration instructions provided by medical staff, which "clearly say do not swallow." *Id*.

Plaintiff arrived at the NSP on April 18, 2025, and "immediately went to case management asking for appropriate housing" but was "repeatedly ignored and dismissed." *Id*. at 20. Plaintiff went to medical on April 23, 2025, where he "again expressed concerns about [his] housing" and "was sent to turnkey," but he "was ignored and sent back to [his] unit." *Id*. Plaintiff then "went to housing officer and expressed [his] concerns," and he "was cuffed and sent to turnkey, where again [he] expressed [his] concerns" and "ultimately [he] was punished and reprimanded." *Id*. Plaintiff "received the first of 10 misconduct reports, all of [which were] for the same rule infraction, 2-E disobeying an order, where in total they took 560 days of 'good time' as well as canteen, phone, and room restriction until the end of July [2025]." *Id*. Though unclear, Plaintiff's concerns about his housing and his requests for help appear to be based on his Substance Use Disorder and the medication he was taking for his disorder, which classified him as a special needs inmate. *Id*. at 21, 25. Plaintiff believes he is being punished for his Substance Use Disorder disability, *Id*. at 20, and alleges he "was discriminated against and ultimately forced off of the medication for medication misuse with no evidence of misuse," *Id*. at 22.

With respect to the individual NDCS Defendants, Plaintiff includes allegations against only Reisdorff, Habtu, Hill and Hauser. *Id*. at 23. On April 23, 2025, Reisdorff "was very aggressive mannered," repeatedly called Plaintiff "a check-in," denied requests for medical and mental health, taunted Plaintiff, and "ma[de] other staff members aware of [Plaintiff's] presence." *Id*. On April 28, 2025, Habtu was "aggressive" during Plaintiff's

3

daily trips to medical for his medication while Plaintiff was "in 4 point cuffs," repeatedly called Plaintiff "a check-in," began taunting Plaintiff daily, and repeatedly told Plaintiff to return to his unit. *Id*. On April 29, 2025, Habtu put Plaintiff in the shower after he turned off the hot water and told Plaintiff, "Cold water's good for you!  I take cold showers." *Id*. It appears Plaintiff, for several days after, just changed his clothes and returned to his cell, rather than taking a cold shower, and he may have received misconduct reports as a result. *Id*. Case Managers Hill and Hauser "continued the excessive daily taunting by telling [Plaintiff] . . . to return to External [Housing]." *Id*. On May 2, 2025, Hill "came to [Plaintiff's] door visually upset and was telling [Plaintiff he] was going to be a Meth user and worthless if [Plaintiff] did not return to External." *Id*.  Hauser also began coming to Plaintiff's cell and telling him "to return to External Housing." *Id*.  Plaintiff returned to External Housing sometime in May 2025, "where [he] was then moved to Maximum Custody" and was placed "in suicide watch multiple times leading up to July," "received even more misconduct reports," and is "now a super max inmate at RTC where [his] medication has been discontinued and [he has] yet to be seen by Medical or Mental Health." *Id*. at 23–24.  Plaintiff has "since been reinstated on the medication." Filing No. 10 at 1.  Plaintiff also complains generally about "multiple issues regarding missing property to medical care to basic hygiene rights[, which] are being violated daily." Filing No. 1 at 24.

Plaintiff alleges the numerous misconduct reports have affected him "mentally as well as [his] physical health being put into jeopardy" and he has "yet to be seen by a doctor after asking for months . . . [and] after being classed as a special needs inmate." *Id*. at 25.  Plaintiff also alleges he has "lost all opportunities for advancement and work to

4

make money" as a result of the reprimands and punishment he has received.  *Id*.  Plaintiff is "asking to be treated correctly, to be diagnosed by a qualified doctor, and to be assessed properly."  *Id*. at 24.  Plaintiff also seeks to have his good time reinstated and his "classification restored," as well as "monetary damages from medical and mental health negligence."  *Id*. at 25.

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. §§ 1915(e) and 1915A.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d

968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III.  DISCUSSION

As explained below, Plaintiff's Complaint fails to state plausible claims for relief under § 1983 against any of the named defendants.  While the SBCDC, the NDCS, and the NSP must be dismissed as defendants to this action, the Court will give Plaintiff leave to file an amended complaint to allege sufficient facts to state plausible claims for relief against Johnson and the individual NDCS Defendants.

### A.  Claims against SBCDC and Johnson in his Official Capacity

Plaintiff names the SBCDC as a defendant.  However, Plaintiff's section 1983 claims may not be asserted against the SBCDC because "it is well settled that municipal police departments, sheriff's offices, and jails are not generally considered persons within the meaning of 42 U.S.C. § 1983 and thus not amenable to suit." *Ferrell v. Williams Cnty. Sheriffs Office*, No. 4:14-CV-131, 2014 WL 6453601, at *2 (D.N.D. Nov. 4, 2014); *see also De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (unpublished) (county jail and sheriff department not subject to suit under § 1983);

*Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (city police department and paramedic services "are not juridical entities suable as such. . . . [t]hey are simply departments or subdivisions of the City government").

Plaintiff also sues SBCDC Sergeant Johnson in his individual and official capacities. *See* Filing No. 1 at 5. Plaintiff's claims against Johnson in his official capacity are actually claims against Scotts Bluff County as Johnson's employing entity. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."). Scotts Bluff County may only be liable under section 1983 if a "policy" or "custom" of the County caused a violation of Plaintiff's constitutional rights. *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). Here, Plaintiff's Complaint fails to allege that any actions were taken pursuant to a policy or custom of Scotts Bluff County, and, thus, Plaintiff's official-capacity claims against Johnson are subject to dismissal for failure to state a claim upon which relief may be granted.

## B.  Claims Against NDCS, NSP, and NDCS Defendants in their Official Capacities

Plaintiff sues the NDCS, the NSP, and all of the NDCS Defendants in their official capacities. Of the NDCS Defendants, Adair, Hauser, Sherwood, Delgado, and Ford are named only in their official capacities, while Habtu, Reisdorff, Hill, and Vast are named in both their official and individual capacities. The Eleventh Amendment bars claims for

damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. § 1983 which seek prospective relief from state employee defendants acting in their official capacity.

Here, the Eleventh Amendment bars Plaintiff's claims for monetary damages against the NDCS, the NSP, and the NDCS Defendants in their official capacities. Moreover, the NDCS and the NSP, as state instrumentalities or governmental entities that are considered arms of the state, are not suable "persons" within the meaning of 42 U.S.C. § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989), and Plaintiff's claims against the NDCS and the NSP must be dismissed. As state employees, the NDCS Defendants all enjoy sovereign immunity for damages claims made against them in their official capacities absent a waiver of immunity by the state or an override of immunity by Congress. There is no indication that Nebraska waived or Congress overrode immunity here. Thus, Plaintiff's claims for damages against the NDCS Defendants in their official capacities must also be dismissed.

While sovereign immunity does not bar claims for prospective relief against the NDCS Defendants in their official capacities, to the extent Plaintiff "challenges prison

8

disciplinary matters where the loss of good time credits was involved, he is precluded from filing an action under 42 U.S.C. § 1983 until the conclusion of a successful habeas action on those matters, which has not been alleged here." *Owens v. Isaac*, No. C06-16 EJM, 2008 WL 5129503, at *2 (N.D. Iowa Dec. 5, 2008), *aff'd*, 324 F. App'x 539 (8th Cir. 2009) (citing *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994)); *see Edwards v. Balisok,* 520 U.S. 641, 648 (1997) (prisoner's claim for damages and declaratory relief "based on allegations . . . that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"). The appropriate vehicle for seeking the restoration of good-time credits is a petition for a writ of habeas corpus under 28 U.S.C. § 2254, which requires prior exhaustion of any available state remedies. *See Sherrod v. Nebraska*, No. 4:07CV3216, 2007 WL 2903004, at *1 (D. Neb. Oct. 4, 2007) (citing cases). Plaintiff, therefore, cannot obtain reinstatement of the good time he lost as a result of disciplinary action in this case. Rather, Plaintiff must have the disciplinary action invalidated by a state court or he may file a petition for writ of habeas corpus in this Court after fully exhausting his state court remedies. *See* 28 U.S.C. § 2254(b)(1).

Similarly, to the extent Plaintiff seeks to challenge the change in his classification as a result of any disciplinary proceedings, such relief is not available in this section 1983 action as Plaintiff "does not have a constitutional right to a particular . . . classification." *Sanders v. Norris*, 153 F. App'x 403, 404 (8th Cir. 2005) (unpublished per curiam) (citing *Hartsfield v. Dep't of Corr.*, 107 Fed.Appx. 695, 696 (8th Cir.2003) (unpublished per curiam) (no liberty interests in particular classification)).

Liberally construed, Plaintiff may be seeking other prospective relief in the form of appropriate medical treatment. However, for the reasons that follow, Plaintiff's Complaint

fails to state a claim against any of the NDCS Defendants upon which relief may be granted.

## C.  Lack of Personal Involvement

Plaintiff names Adair, Hauser, Sherwood, Delgado, Ford, Habtu, Reisdorff, Hill, and Vast as defendants in this action, but, as indicated above, the Complaint only contains allegations against NDCS Defendants Reisdorff, Habtu, Hill, and Hauser.  "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation."  *Kingsley v. Lawrence Cnty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)).  A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.  *Iqbal*, 556 U.S. 662, 676 (2009).  Because Plaintiff makes no allegations against Adair, Sherwood, Delgado, Ford, and Vast in his Complaint, let alone that any of them were personally involved in the alleged constitutional violations, Plaintiff fails to state a claim upon which relief can be granted against any of these defendants. *See Krych v. Hvass*, 83 Fed.Appx. 854, 855 (8th Cir. 2003) (holding court properly dismissed claims against defendants where pro se complaint was silent as to the defendants except for their names appearing in the caption).

## D.  Deliberate Indifference to Medical Needs

Liberally construed, Plaintiff alleges claims of deliberate indifference to his medical needs in violation of the Eighth Amendment against the remaining defendants, SBCDC Sergeant Johnson and NDCS Defendants Reisdorff, Habtu, Hill, and Hauser.  To prevail on such a claim, Plaintiff must prove that the defendants acted with deliberate indifference to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The

deliberate-indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) the defendants knew of, but deliberately disregarded, those needs. *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (Eighth Amendment claim based on inadequate medical attention requires proof that officials knew about excessive risks to inmate's health but disregarded them and that their unconstitutional actions in fact caused inmate's injuries); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

> Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate. An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate. Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision.

*Schaub v. Vonwald*, 638 F.3d 905, 914-15 (8th Cir. 2011) (internal quotations and citations omitted). "For a claim of deliberate indifference, the prisoner must show more than negligence, more than gross negligence, and mere disagreement with treatment decisions does not reach the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citation omitted).

### 1. Johnson

Plaintiff alleges an Eighth Amendment claim against Johnson for "enforcing improper distribution of [his] medication" while Plaintiff was at the SBCDC. Filing No. 1 at 10. As Plaintiff alleges, he did not receive his medication for his Substance Abuse Disorder for 17 days after arriving at the SBCDC, at which time Johnson produced an

11

emergency prescription in response to Plaintiff's numerous inmate requests. *Id*. at 18. Once obtained, Plaintiff was forced to swallow the crushed medication contrary to the medication administration instructions provided by medical staff. *Id*.

While the knowing failure to administer prescribed medicine can constitute deliberate indifference, to establish a constitutional violation, an inmate must produce evidence that the delay in providing medical treatment had a detrimental effect on the inmate. *Motton v. Lancaster Cnty. Corr.*, No. 4:07CV3090, 2008 WL 2859061, at *6 (D. Neb. July 21, 2008) (citing *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).  Here, Plaintiff does not allege any facts to suggest that he suffered any detrimental effects as a result of the 17-day delay in receiving his medication for his Substance Abuse Disorder.  Plaintiff generally alleges that the medication has severe withdrawal effects, but he does not allege any facts indicating he experienced such effects.  Moreover, the mere fact that Johnson, in response to Plaintiff's inmate requests, obtained an emergency prescription of Plaintiff's medication 17 days after Plaintiff entered the SBCDC does not show that Johnson "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with [Plaintiff's] treatment once prescribed." *Estelle*, 429 U.S. at 104–05.  Plaintiff also does not allege any facts to suggest Johnson was involved in the improper administration of his medication and, even if the Court assumes Johnson was involved somehow, Plaintiff's allegations suggest, at most, mere negligence in improperly administering the medication to him, which does not rise to the level of a constitutional violation. *See Fourte v. Faulkner Cnty., Ark.*, 746 F.3d 384, 390 (8th Cir. 2014) (defendants were, "[a]t most, . . . negligent, but deliberate indifference is more even than gross negligence" (internal quotation

omitted)).  Additionally, Plaintiff does not allege any facts to suggest that receiving his medication in the improper crushed form subjected him to a serious risk of harm, which Johnson deliberately disregarded.  In short, Plaintiff's vague, threadbare allegations are insufficient to nudge his claims against Johnson across the line from conceivable to plausible.  *See Twombly*, 550 U.S. at 570.

### 2.  Reisdorff, Habtu, Hill, and Hauser

Even liberally construed, Plaintiff's Complaint does not allege facts showing that Reisdorff, Habtu, Hill, and Hauser were deliberately indifferent to Plaintiff's serious medical needs.  At most, Plaintiff alleges Reisdorff denied Plaintiff's requests for medical and mental health on April 23, 2025, but a one-time denial of unspecified medical and mental health requests fails to suggest Reisdorff was deliberately indifferent to Plaintiff's serious medical needs.  The other defendants are not alleged to have taken any actions that could be construed as exhibiting a deliberate indifference to Plaintiff's medical needs. As such, Plaintiff fails to state an Eighth Amendment claim for deliberate indifference to his medical needs against any of these NDCS Defendants.

### E.  Prison Policy and Conditions

Liberally construed, Plaintiff also complains that the NDCS Defendants fail to comply with prison policy and subject him to unconstitutional conditions of confinement, including "missing property," taunting, and denial of "basic hygiene rights," which the Court assumes refers to the cold showers Habtu required Plaintiff to take.  Filing No. 1 at 24.  However, to the extent Plaintiff claims that the NDCS Defendants failed to follow prison policy regarding any prison conditions, "there is no § 1983 liability for violating prison policy."  *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997); *see Phillips v. Norris*,

13

320 F.3d 844, 847 (8th Cir. 2003) (holding that prisoners do not have a due process right to enforce compliance with internal prison rules or regulations). And, as explained below, Plaintiff fails to state a plausible Eighth Amendment conditions of confinement claim.

The Eighth Amendment's prohibition against "cruel and unusual punishments" requires that prison officials provide humane conditions of confinement. "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). The Constitution "does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). In general, "[t]o establish a conditions of confinement claim, a plaintiff must demonstrate (1) that the alleged deprivation was 'objectively, sufficiently serious' to result in the 'denial of the minimal civilized measure of life's necessities,' and (2) that the prison official whose action or omission caused the deprivation behaved with 'deliberate indifference to inmate health or safety.'" *Hamner v. Burls*, 937 F.3d 1171, 1178 (8th Cir. 2019) (quoting *Farmer*, 511 U.S. at 834).

Here, Plaintiff's allegations fail to satisfy the first element of an objectively, sufficiently serious deprivation. First, Plaintiff does not provide any factual context for what he means by "missing property" and his passing reference to such an issue fails to suggest any Eighth Amendment violation. As to his allegations of taunting and aggressive behavior by Reisdorff, Habtu, Hill, and Hauser, these allegations do not state a claim upon which relief may be granted under § 1983. *See Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) ("Verbal abuse is normally not a constitutional violation."); *King v. Olmsted*

14

*Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) ("The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.") (quotation marks and citation omitted); *Kalmio v. Mettler*, No. 4:13-CV-083, 2013 WL 4478691, at *2 (D.N.D. Aug. 20, 2013) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") (quotation marks and citations omitted). Lastly, with respect to Plaintiff's "hygiene" claims, at most, the Court can infer that Habtu required Plaintiff to take cold showers for about a week between April 29, 2025, to May 6, 2025, which Plaintiff apparently did at least once and refused to do thereafter. *See* Filing No. 1 at 23. Plaintiff's allegations fail to state a claim for relief as "a prisoner forced to take cold showers on occasion has not stated [an Eighth Amendment] claim", *Gordon v. Sheahan*, No. 96 C 1784, 1997 WL 136699, at *7 (N.D. Ill. Mar. 24, 1997) (internal quotation omitted); *see also Gins v. J.B. Evans Corr. Ctr.*, No. CIV.A. 08-1475, 2009 WL 196199, *4 (W.D. La. Jan. 23, 2009) (prisoner's claim that having to take cold showers for a period of time during the summer months violated the Eighth Amendment dismissed as frivolous), and even complete suspension of shower privileges for more than a week does not violate the Eighth Amendment, *see Jones v. Houston*, No. 4:06CV3314, 2007 WL 3275125, at *8 (D. Neb. Nov. 2, 2007) (no Eighth Amendment claim raised even if court assumed prisoner not permitted to shower during thirteen-day lockdown); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("a two-week suspension of shower privileges does not suffice as a denial of basic hygienic needs" (internal quotation marks and quotation omitted)).

15

Plaintiff, therefore, has failed to allege any Eighth Amendment conditions of confinement claims upon which relief may be granted. However, Plaintiff will be given leave to amend these and his other claims as set out below.

## IV.  PENDING MOTIONS

### A.  Motions for Appointment of Counsel

With his Complaint, Plaintiff filed a motion requesting the appointment of counsel, Filing No. 4, and he later filed a renewed motion seeking counsel due to his lack of legal knowledge, his limited law library access, and his limited ability to litigate due to his incarceration, Filing No. 8. "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

The Court has carefully reviewed the record and finds there is no need for the appointment of counsel at this time. As such, Plaintiff's request for appointment of counsel shall be denied without prejudice to reassertion. The Court will, however, "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be

appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

## B. Motion for Clarification

On December 11, 2025, Plaintiff filed correspondence, which the Court construes, in part, as a motion for clarification. Filing No. 10. Plaintiff asks the Court to advise him "of the steps required to proceed as well as the further requirements for the assignment of counsel." *Id*. at 2. Upon consideration, Plaintiff's motion is granted, and Plaintiff is advised that the Court has now conducted an initial review of his Complaint and determined that Plaintiff must file an amended complaint with sufficient facts to state a plausible claim for relief before this matter may proceed. Also, as explained above, the Court will not appoint counsel for Plaintiff at this time.

## V. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted against the named defendants, and the Court will dismiss the SBCDC, the NDCS, and the NSP as defendants to this action. On the Court's own motion, however, Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently states his constitutional claims against Johnson, the individual NDCS Defendants, and/or any other specific, named defendants involved in the alleged misconduct. The amended complaint must identify each defendant by name or must provide as much identifying information for each defendant as possible if the defendant's name is unknown and must set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. To be clear, Plaintiff's amended complaint must restate the relevant allegations of his Complaint and any new allegations. Plaintiff should

17

be mindful to explain what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him. Plaintiff is warned that any amended complaint he files will supersede, not supplement, his prior pleadings. Plaintiff is encouraged to use the court-approved form to draft his amended complaint, which the Clerk of the Court will provide to him.

If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, this action will be dismissed without prejudice and without further notice. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he files an amended complaint which addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED:

1.     Plaintiff's claims against the SBCDC, the NDCS, and the NSP are dismissed. The Clerk of Court is directed to remove "Scottsbluff County Detention Center," "Nebraska Department of Correctional Services," and "Nebraska State Penitentiary" as defendants to this action.

2.     Plaintiff shall have until **March 30, 2026,** to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff. In his amended complaint, Plaintiff must identify each defendant by name or provide as much identifying information for each defendant as possible and set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. Plaintiff should be mindful to explain in his amended complaint what each

18

defendant did to him, when the defendant did it, and how the defendant's actions harmed him.

3.     In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations.  Failure to consolidate all claims into *one document* may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

4.     The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

5.     The Clerk of the Court is directed to send to Plaintiff the Form Pro Se 14 Complaint for Violation of Civil Rights (Prisoner).

6.     The Clerk of the Court is further directed to set a pro se case management deadline using the following text: **March 30, 2026**: check for amended complaint.

7.     Plaintiff's motions for appointment of counsel, Filing No. 4; Filing No. 8, are denied without prejudice to reassertion.

8.     Plaintiff's motion for clarification, Filing No. 10, is granted consistent with this Memorandum and Order.

9.     Plaintiff shall keep the Court informed of his current address at all times while this case is pending.  Failure to do so may result in dismissal without further notice.

Dated this 26th day of February, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

19